IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :         CASE NO. 11-02552 (ESL)
                                                :
ZAIDA IVETTE OTERO LOPEZ                        :
                                                :         CHAPTER 13
     Debtor                                     :
_____         :
                                                :
ZAIDA IVETTE OTERO LOPEZ                         :         ADVERSARY NO. 12-00244 (ESL)
                                                :
     Plaintiff                                  :
                                                :
          vs.                                   :
                                                :
DEPARTMENT OF TREASURY OF THE                   :
COMMONWEALTH OF PUERTO RICO                      :
through its Secretary, Jesus F. Mendez          :
Rodriguez, and Secretary of Justice,            :
Guillermo Somoza Colombani;                     :
COMMONWEALTH OF PUERTO RICO,                     :
through its Secretary of Justice,               :
Guillermo Somoza Colombani                      :
                                                :
     Defendants                                 :
                                                :
_____         :

## OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion for Partial Summary Judgment* filed on December 6, 2012 (Docket No. 24) by Zaida I. Otero Lopez ("Debtor" or "Plaintiff") alleging that the Puerto Rico Treasury Department ("PR Treasury") wilfully violated the automatic stay pursuant to 11 U.S.C. § 362(a)(6) because it sent to the Debtor various notices and requests for payment of income tax liabilities after the filing of the bankruptcy petition. PR Treasury filed a *Motion in Opposition to Plaintiff's Motion for Partial Summary Judgment* on January 16, 2013 (Docket No. 32) arguing that the post-petition notices and demand for payments fall within the exception of the automatic stay under 11 U.S.C. § 362(b)(9)(D) and consequently they do not constitute a violation of the automatic stay. For the reasons set forth below, the Plaintiff's *Motion for Partial Summary Judgment* (Docket No. 24) is hereby granted in part and denied in part.

### Material Uncontested Facts and Procedural Background

On March 28, 2011, the Plaintiff filed her Chapter 13 Bankruptcy Petition (Lead Case Docket No. 1). PR Treasury was included in both the master address list, and in Schedule "E" of

the Bankruptcy Petition, with regards to the Plaintiff's pre-petition tax liability of $352.00. See Lead Case Docket No. 1, p. 26.

Upon the filing of the Plaintiff's Bankruptcy Petition, notice was given to PR Treasury, which was included in the master list, and the pre-petition tax debt was listed in Schedule E. See ¶¶ 7, 8, 9 and 11 of the *Complaint* (Docket No. 1), ¶¶ 12, 13, 14 and 16 of the *Answer to the Complaint* (Docket No. 16), ¶¶ 1-4 of the *Plaintiff's Statement of Uncontested Facts* (Docket No. 25, p. 2) and ¶¶ 1-4 of the *Reply to Plaintiff's Statement of Material Facts* (Docket No. 33, p. 1).

On October 26, 2011, PR Treasury sent the Plaintiff a *Notification and Demand for Payment* in the amount of $370.71 on account of her 2010 income tax liability indicating that "upon review of the income tax return submitted by the taxpayer ... it was determined ... that the return has an adjustment which, according to the 1994 Internal Revenue Code of Puerto Rico, as amended, represents a mathematical error" (Docket No. 30, p. 3).

On November 4, 2011, the Plaintiff visited PR Treasury's Main Office in Old San Juan, where she was personally attended to by a female officer whose last name was "Cintrón". During that visit, the Plaintiff informed Ms. Cintrón that she had filed her bankruptcy case and that her plan contemplated the payment of her debt to PR Treasury. See Docket No. 25, Exhibit 3, ¶¶ 3-4.

On December 1, 2011, PR Treasury sent a letter to the Plaintiff advising her that she owed $393.42 including interest, fees and penalties accruing as of December 18, 2011, and that in order to avoid the accrual of additional interest and fees, she should pay her debt at the nearest PR Treasury collections office. See Docket No. 30, p. 4.

On December 19, 2011, PR Treasury sent the Plaintiff another letter informing her that she had outstanding tax debts in the amount of $392.65, and that Public Law No. 218-2011 to Strengthen Security and Public Health was enacted to allow taxpayers to clear their tax records with the PR Treasury and to make their tax debts current, releasing taxpayers who paid their tax debts on or before February 29, 2012 from the payment of interest, fees and penalties. See Docket No. 30, pp. 6-7.

On December 26, 2011, PR Treasury sent the Plaintiff a *Second Collections Notice* informing her that she had an outstanding tax debt that amounted to $413.36 including principal, interest and

penalties calculated as of January 12, 2012 and that in order to avoid the accrual of additional interest and fees, she should pay her debt at the nearest PR Treasury collections office. See Docket No. 30, p. 8.

On March 16, 2012, PR Treasury sent the Plaintiff a *Final and Urgent Collections Notice* indicating that according to its records, she had a tax debt with amounted to $421.15, including principal, interest and penalties accruing as of April 2, 2012, that prior attempts to collect said debt had been fruitless and that the 1994 Internal Revenue Code of Puerto Rico empowers the Secretary of the Treasury to use certain collection mechanisms to recover the amounts owed such as to demand her employer to deduct payment of the debt form her salary, demand her financial institution to withhold payment of the debt from her bank accounts, seize and auction her personal and real property in an expedited way, or order withholding of her payments if she were a supplier of goods and services to the Government of Puerto Rico.  PR Treasury also suggested that she pay her debt at the nearest collections office and indicated that if it failed to receive her payment for the amount owed in full within the next 10 days, it would proceed to use any of the collection mechanisms afforded in the 1994 Internal Revenue Code of Puerto Rico previously described and report her debt to the Credit Information Bureau. See Docket No. 30, pp. 9-10.

On April 11, 2012, the Plaintiff filed the instant *Complaint* (Docket No. 1) claiming actual and punitive damages for PR Treasury's alleged violation of the automatic stay and attorney's fees.

On June 29, 2012, PR Treasury filed its *Answer to the Complaint* (Docket No. 16) claimig it did not violate the automatic stay.

On December 6, 2012, the Plaintiff filed her *Motion for Partial Summary Judgment and Memorandum in Support Thereof* with its *Statement of Uncontested Facts* (Docket Nos. 24 and 25). The Plaintiff sustains that PR Treasury wilfully violated the automatic stay provision under 11 U.S.C. § 362(a)(6) and therefore is entitled to actual and punitive damages and attorneys' fees.

On January 16, 2013, PR Treasury filed its *Opposition to Plaintiff's Motion for Partial Summary Judgment* with its *Reply to Plaintiff's Statement of Material Facts* (Docket Nos. 32 and 33) arguing that it did not violate the automatic stay because the documents it sent to the Plaintiff were only notices that constitute an administrative procedure allowed as an exception to the

3

automatic stay under 11 U.S.C. § 362(b)(9). In addition, PR Treasury alleges that pursuant to 42 U.S.C.§ 1981a(b)(1), the Plaintiff is not entitled to punitive damages against an arm of the Commonwealth of Puerto Rico. PR Treasury also requests the dismissal with prejudice of the *Complaint* in the instant adversary proceeding.

On February 13, 2013, the Plaintiff filed a *Reply to Opposition to Motion for Summary Judgment* (Docket No. 45)[1] arguing that PR Treasury's actions in the instant case exceed the intended scope of the exception to the automatic stay provided in 11 U.S.C. § 362(b)(9) insofar as PR Treasury: (1) knew of the automatic stay since the case's filing; (2) continued to coerce the Plaintiff to pay a pre-petition debt even after she personally met with a PR Treasury Department Officer and reminded PR Treasury of the Chapter 13 plan's provision to pay for the pre-petition priority debt; (3) forewent the bankruptcy claims process and let the governmental bar date expire; (5) expressly threatened the Plaintiff with levy and garnishment of her property if she did not satisfy the debt in 10 days; and (4) filed a time-barred claim 1 year and 9 months after the petition's filing, only after this adversary proceeding was filed, frustrating the Plaintiff's Chapter 13's provision of payment of the pre-petition priority debt. In addition, the Plaintiff distinguishes the instant case from the case of In re Centeno-Sanchez, 2013 Bankr. LEXIS 137, 2013 WL 140453 (Bankr. D.P.R. 2013).

On March 3, 2013, PR Treasury filed a *Sur-Reply to Plaintiff's Reply to Defendants' Opposition to Motion for Partial Summary Judgment* (Docket No. 55) reaffirming that the notices and demand for payment of Plaintiff's 2010 tax assessment fall within the exception of the automatic stay under 11 U.S.C. § 362(b)(9)(D).

Applicable Law and Analysis

*(A)    Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be

---

[1] The Plaintiff also filed a *Reply Statement of Uncontested Material Facts* (Docket No. 46) on February 13, 2013.

entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056. See also In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure 3d § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does

not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

Fed. R. Civ. P. 56 was extensively rewritten in 2010. See 10B Wright, Miller & Krane Federal Practice & Procedure: Civil 3d § 2737. Amended subsection (a) of Fed. R. Civ. P. 56 now includes express authority for judgment on less than the entire case denominating it in its subsection title as "Partial Summary Judgment", which allows summary judgment "upon all or any part" of a claim or defense by any party.

In the instant case, the uncontested facts are supported from the admissions to the pleadings and the uncontested documents and sworn statements in the record.

*(B)     Automatic Stay under 11 U.S.C. § 362(a)*

The automatic stay provision is one of the fundamental debtor protections in the Bankruptcy

Code.  It gives the debtor a "breathing spell" from creditors and stops all collection efforts, all harassment, and all foreclosure actions.  H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 340-342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296-97.  Also see ICC v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991); In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir. 1982).  "It allows the debtor to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy."  Id. at 977.  Section 362 of the Bankruptcy Code provides that upon filing for bankruptcy, a debtor is immediately protected by an automatic stay that prohibits, *inter alia*, the "continuation ... or other action or proceeding against the debtor that was or could have been commenced before the [bankruptcy petition] or to recover a claim against the debtor that arose before the commencement of the case under this title" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case..." 11 U.S.C. §§ 362(a)(1) and (a)(6).  "This respite enables debtors to resolve their debts in a more orderly fashion and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets."  Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (citations omitted).  "Section 362(a)(6) is intended to prevent creditor harassment of the debtor in attempting to collect pre-petition debts.  The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)."  Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[8][a] (16[th] ed. 2013).  Despite the fundamental importance of the automatic stay, Congress has allowed certain exceptions to the automatic stay, such as those included under Section 362(b) of the Bankruptcy Code.  See 229 Main St. Ltd. Pshp. v. Mass. EPA (In re 229 Main St.), 262 F. 3d 1, 3-4 (1st Cir. 2001).

*(C)      Exceptions to the Automatic Stay under 11 U.S.C. § 362(b)(9)*

Section 362(b) of the Bankruptcy Code lists the exceptions of a debtor's right to the automatic stay.  Section 362(b)(9) provides an exception to the automatic stay provisions under subsection (a) of Section 362 of the Bankruptcy Code by allowing: "(A) an audit by a governmental

unit to determine tax liability; (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency; (C) a demand for tax returns; or (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor)." 11 U.S.C. § 362(b)(9). "As amended in 1994, Section 362(b)(9) also permits a governmental unit to conduct an audit to determine tax liability, to make a demand for tax returns and to make an assessment, issue notice and demand payment of any tax." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.05[9] (16th ed. 2013). Section 362(b)(9) limits the impact of Section 362(a)(6) in certain circumstances regarding tax liabilities. See Rosas v. Monroe County Tax Claim Bureau, 323 B.R. 893, 898 (Bankr. M.D. Pa. 2004).

In the instant case, PR Treasury mailed the Plaintiff the following notices:

(1) on October 26, 2011, PR Treasury sent the Plaintiff a *Notification and Demand for Payment* in the amount of $370.71 on account of her 2010 income tax liability. The notice indicated that the date of assessment was October 26, 2011, and that code number 013 indicates that the amount owed was determined by PR Treasury upon Plaintiff's review of a mathematical error. See Docket No. 30, p. 3;

(2) on December 1, 2011, PR Treasury sent the Plaintiff an automated letter advising her that she owed $393.42 including interest, fees and penalties accruing as of December 18, 2011 and that in order to avoid the accrual of additional interest and fees, she should pay her debt at the nearest PR Treasury collections office or mail a check or postal money order payable to the Secretary of Treasury. It also advised the Plaintiff that is she was unable to pay the outstanding balance in full, or if she had proof that she had already paid, then she should contact the PR Treasury "Call Center" in order to do the needed paperwork for the purpose of clearing the debt. See Docket No. 30, p. 4;

(3) on December 19, 2011, PR Treasury sent the Plaintiff another letter (with a model code SC 6026) informing her that though she had an outstanding tax debt in the amount of

$392.65, Public Law No. 218-2011 to Strengthen Security and Public Health was enacted to allow taxpayers to clear their tax records with the PR Treasury and to make their tax debts current, since it releases all taxpayers who pay their debts on or before February 29, 2012 from the payment of interest, fees and penalties. The letter urged Plaintiff to avail herself of the benefits of Law No. 218-2011 and get caught up with PR Treasury to comply with her tax responsibility and thus contribute to the well-being of Puerto Rico. See Docket No. 30, pp. 6-7;

(4) on December 26, 2011, PR Treasury sent the Plaintiff a *Second Collections Notice* informing her that she had a tax debt that amounted to $413.36 including principal, interest and penalties calculated as of January 12, 2012 and that in order to avoid the accrual of additional interest and fees, she should pay her debt at the nearest PR Treasury collections office or mail the payment by check or postal money order payable to the Secretary of Treasury. It again advised the Plaintiff that is she was unable to pay the outstanding balance in full, or if she had proof that she had already paid, then she should contact the PR Treasury "Call Center" in order to do the needed paperwork for the purpose of clearing the debt. See Docket No. 30, p. 8; and

(5) on March 16, 2012, PR Treasury sent Plaintiff a *Final and Urgent Collections Notice* indicating that according to its records, she had a tax debt with amounted to $421.15, including principal, interest and penalties accruing as of April 2, 2012, that prior attempts to collect said debt had been fruitless and that the 1994 Internal Revenue Code of Puerto Rico empowers the Secretary of the Treasury to use certain collection mechanisms to recover the amounts owed such as to demand her employer to deduct payment of the debt form her salary, demand her financial institution to withhold payment of the debt from her bank accounts, seize and auction her personal and real property in an expedited way, or order withholding of her payments if she were a supplier of goods and services to the Government of Puerto Rico. PR Treasury also advised the Plaintiff to pay her debt at the nearest collections office and failure to do so within the next 10 days would result in PR Treasury proceeding to use any of the collection mechanisms afforded in the 1994 Internal Revenue

Code of Puerto Rico, including the seizing and auctioning of her personal and real property in an expedited way, to collect the debt and report her debt to the Credit Information Bureau. See Docket No. 30, pp. 9-10.

The first *Notification and Demand for Tax Payment* issued by PR Treasury on October 26, 2011 informing the Plaintiff of a mathematical in her income tax return (Docket No. 30, p. 3) clearly falls within the scope of Section 362(b)(9)(B), which permits the "issuance to the debtor by a governmental unit of a notice of tax deficiency." 11 U.S.C. § 362(b)(9)(B). Thus, that first *Notification* does not constitute a violation to the automatic stay.

The tax notices in the instant case issued by PR Treasury on December 1, 2011 (Docket No. 30, pp. 4-5), December 19, 2011 (Docket No. 30, pp. 6-7), and December 26, 2011 (Docket No. 30, p. 8) resemble the ones considered in In re Centeno-Sanchez, 2013 Bankr. LEXIS 137, 2013 WL 140453. In Centeno-Sanchez, this court found that the notices sent by PR Treasury fell within the exception to the automatic stay afforded in Section 362(b)(9)(D) of the Bankruptcy Code since they were notices that only demanded payment and differentiated them from notices with an intent to levy. Moreover, the court also found that one of the documents issued by PR Treasury was merely an informative notice by which the taxpayer was informed of the enactment of a new law from which any taxpayer could benefit from by allowing all tax debtors to pay certain types of overdue taxes without having to pay interest, surcharges and/or penalties, much like the notice in the instant case issued by PR Treasury to the Plaintiff on December 19, 2011 (Docket No. 30, pp. 6-7). Like in the case at hand, in Centeno-Sanchez the court reasoned that the notices issued by PR Treasury fell within the exception provided in Section 362(b)(9)(D), because the demand for payment were not an intent to levy. See Jacoway v. Dep't of Treasury (In re Graycarr, Inc.), 330 B.R. 741, 745 (Bankr. W.D. Ark. 2005) ("The Court believes that the Request For Payment falls within the purview of Section 362(b)(9)(D) of the code and is not a violation of the automatic stay. See Covington v. IRS (In re Covington), 256 B.R. 463, 466 (Bankr. D.S.C. 2000). However, the IRS's collection actions continued through its Notice of Levy dated May 23, 2005, which was mailed to Arvest Bank. The mailing of the Notice of Levy constitutes a collection effort by the IRS and advises the taxpayer of specific consequences if payment is not made within a specified period of

time.  It is not an assessment and demand for payment and is not excepted from the automatic stay by § 362(b)(9)(D)"); H&H Beverage Distributors v. Dept. of Revenue of Comm. of Pa., 850 F.2d 165, 169-170 (3rd Cir. 1988) (the Court of Appeals for the Third Circuit concluded that the Commonwealth of Pennsylvania did not violate the automatic stay by auditing the debtor, calculating its claim and then issuing a notice of assessment, but ruled that once the notice was issued, the Commonwealth was barred from taking steps to create a lien).  In the instant case, those specific notices by PR Treasury dated December 1, 2011 (Docket No. 30, pp. 4-5), December 19, 2011 (Docket No. 30, pp. 6-7), and December 26, 2011 (Docket No. 30, p. 8) did not make any efforts to collect the tax liability owed by the Plaintiff either by seizure, lien or levy of the Debtor's property and therefore do not constitute a violation of the automatic stay under the exception provided in Section 362(b)(9)(D).  See In re Curpier, 2009 Bankr. Lexis 2896 at *17, 2009 WL 2929245 at *6 (Bankr. N.D.N.Y. 2009), citing Neary v. Department of Revenue (In re Neary), 220 B.R. 864, 867 (Bankr. E.D. Pa. 1998) ("The making, post-petition, of an assessment of the Debtors' pre-petition tax liability, and the issuance of letters demanding payment thereof cannot, without more, be viewed as violating the automatic stay.").

The *Final and Urgent Collections Notice* issued by PR Treasury on March 16, 2012, however, is different.  In that *Final and Urgent Collections Notice*, PR Treasury indicated to the Plaintiff that if it "fail[ed] to receive payment for the amount owed in full [$421.15] within the next ten (10) days as of th[at] notification, [it] would proceed to use any of the collection mechanisms described above [referring to seizing and auctioning off her personal and real property in an expedited way] and [it would] provide information about [her] debt to the Credit Information Bureau" (Docket No. 30, p. 9).  PR Treasury alleges that *Notice* was "not a collections effort but an administrative procedure of the agency" (Docket No. 32, p. 14).  This court is not moved by such argument.

The exception to the automatic stay afforded in Section 362(b)(9)(D) is not absolute and does not give PR Treasury free leeway to collect, garnish or seize the bankruptcy estate's funds to pay a pre-petition tax debt.  For instance, in Jimenez Garcia v. Dep't of Treasury (In re Jimenez Garcia), 2012 Bankr. LEXIS 5191 at **18-19, 2012 WL 5439021 at *6 (Bankr. D.P.R. 2012), this court

11

concluded that although "Section 362(b)(9) of the Bankruptcy Code operates as an exception to the automatic stay for a 'governmental unit' like the PR Treasury Department to conduct audits to determine a tax liability, demand for tax returns or the making of an assessment for any tax and issuance of a notice and demand for payment ... the Notices of Attachment [of that case did] not fall under any of those circumstances" because they ordered the certain banks to attach and garnish any and all of the debtors' accounts up to the amount of $21,500.83 in favor of the Commonwealth of Puerto Rico and actually garnished and seized $1,732.51 from the bankruptcy estate's bank account. Under those circumstances, the court determined that Section 362(b)(9)(D) was inapplicable and entered partial summary judgment against PR Treasury's as to its liability for the violation of the automatic stay.

In In re Covington, *supra,* the debtors filed amended tax returns for six years, which the IRS determined were frivolous. Accordingly, the IRS mailed a Form 866A document to the debtors which stated "you filed a Form 104X excluding taxable income. Your claim has been disallowed." 256 B.R. at 464. The IRS then imposed a "frivolous return penalty" of $500 for each of the returns. The IRS sent the debtors Form 6335 documents that notified them that they must pay the entire amount of the penalty. A month later, the IRS sent the debtors Notices of Intent to Levy with pamphlets entitled "Understanding the Collection Process". Id. at 466. The IRS contended that the Notice of Intent of Levy was nothing more than a notices of assessment under Section 362(b)(9)(D). The court found that the six notices informing the debtors of the $500 assessment for each return qualified for the exception set forth at Section 362(b)(9)(D). Id. at 465-466. However, the court found that the Notice of Intent of Levy did not constitute an assessment and demand for payment, and concluded that the IRS was in violation of the automatic stay as to those notices:

> These notices dated December 21, 1998 entitled "Notice Of Intent To Levy - You Must Respond Now" evidence more than the making of an assessment by the IRS. These notices, along with the accompanying pamphlet, clearly constitute more that a demand for payment. These notices constitute a collection effort and advise the debtor of specific consequences if payment is not made within a certain period of time. They constitute threats which the IRS cannot in fact carry out because of the automatic stay but debtors, at least most debtors, don't know this. This Court is of the opinion that the notices sent by the IRS to the debtors do not constitute an assessment and demand for payment and are not a collection efforts which are excepted from the stay by 11 U.S.C. § 362(b)(9)(D). In re Covington, 256 B.R. at 466 (citations omitted).

In In re Shealy, 90 B.R. 176 (Bankr. W.D.N.C. 1988), the first notice sent by the South Carolina Tax Commission stated that "demand is made for ... payment" and "if payment is not made a warrant for distraint will be issued." Id. at 179. The court found that this notice contained "strong language threatening issuance of a 'warrant of distraint'" if the debt was not paid. Id. at 179. A subsequent notice sent by the Tax Commission threatened seizure of wages and bank accounts, among others. Id. at 179. The court concluded that the notices were "'junk yard dogs' of tax notices designed for no other purpose than scaring the debtors into paying up before a 'warrant of distraint' is filed." Id. at 179. Based upon the content of the notices, the court found that they were more than just a notice of tax deficiency and that its strong threatening language was not exempted under Section 362(b)(9). Id. at 180.

In In re Layton, 220 B.R. 508 (Bankr. N.D.N.Y. 1998), the court was asked to address motions filed by debtors seeking sanctions against Tioga County in three separate cases. Letters were sent to the debtors in each of the three cases notifying them that they owed real property taxes for 1996. The letters provided that if the taxes were not paid by December 10, 1997, Tioga County would file a "Notice and Petition of Foreclosure" which would be published in the local newspapers. 220 B.R. at 511. A subsequent letter also stated that failure to pay the taxes would result in the eventual loss of the debtors' property. Id. at 511. The court found that Tioga County violated the automatic stay by threatening "to publish a notice in the newspapers, file a list of delinquent taxes and file a notice and petition of foreclosure. Due to the content of these letters, the court finds that they are more than mere notices and constitute a demand for payment in violation of the stay." Id. at 516.

In In re LTV Steel Co., 264 B.R. 455 (Bankr. N.D. Ohio 2001), the notices sent by the Minnesota Department of Revenue to the debtor stated that "if [the tax] amount [due was] not remitted immediately, collection action will be initiated with no further notice to you. This may include levying upon your bank account or other property." Id. at 472. In addition, subsequent notices by the Minnesota Department of Revenue also stated that "immediate payment of [the tax amount due] is demanded. If not paid, tax liens will be filed against you, copies of which are enclosed." Id. at 472. The court found that insofar as the mailings by the Minnesota Department

13

of Revenue "were notices of a tax deficiency, they were indeed not subject to the stay pursuant to Section 362(b)(9)(D). However, Section 362(b)(9) does not allow a taxing authority [like PR Treasury] to threaten the seizure of a debtor's property". Id. at 472. Thus, the court concluded that "to the extent that these collection notices threatened seizure of [the debtor's] property, they were not exempted from the automatic stay." Id. at 472.

In In re Curpier, 2009 Bankr. LEXIS 2896 at **17-18, 2009 WL 2929245 at *6, the court found no violation of the automatic stay by the taxing authority under Section 362(b)(9)(D) because (a) there was no suggestion that it made any efforts to collect the tax due from the debtors, either by seizure or levy of the debtors' property, and (b) there were no allegations of coercion or harassment. Instead, the court weighed that "[i]ts participation in the debtors' case consisted of filing its proof of claim ... and then mailing the Notice and Demand", that is, "[i]t simply took advantage of the exception set forth at Section 362(b)(9)(D) allowing it to send out its Notice and Demand and informing the debtors' of the liability." Id.

The instant case differs from In re Centeno-Sanchez, 2013 Bankr. LEXIS 137, 2013 WL 140453, because, although the initial notices sent by PR Treasury to the Plaintiff (Docket No. 30, pp. 3-8) were exempted under Section 369(b)(9)(B) and (D), the last one dated March 16, 2012 (Docket No. 30, pp. 9-10) constituted a threatened seizure to the Plaintiff, which is not protected by Section 369(b)(9)(D). The exception to the automatic stay afforded in Section 362(b)(9)(D) applies to notices by PR Treasury that only demand payment without an intent to levy, like in Centeno-Sanchez. Conversely, post-petition notices that involve threats by a taxing authority to collect, garnish, lien and/or levy the debtor's property to secure pre-petition tax debts do not fall under the exception provided in Section 369(b)(9)(D).

*(D)      Violation of the Automatic Stay*

The automatic stay imposes on non-debtor parties an affirmative duty of compliance. Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). To ensure compliance, Section 362(k) of the Bankruptcy Code provides the necessary means to redress violations of the stay: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive

damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-578 (B.A.P. 1st Cir. 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009). A willful violation does not require a specific intent to violate the automatic stay. "The standard for a willful violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. at 269. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. at 269.

In the case at bar, the Plaintiff satisfies the first requirement established In re Slabicki, 466 B.R. at 577-578, because, as discussed above, the court finds that the notice by PR Treasury dated March 16, 2012 (Docket No. 30, pp. 9-10) constitutes a threatened seizure that is not protected by the exception afforded in Section 369(b)(9)(D), and consequently, it is a post-petition collection against the debtor of a pre-petition debt under 11 U.S.C. § 362(a)(6).

As to the second requirement, the court also finds that the violation of the automatic stay was willful. PR Treasury acknowledged having been given notice of the filing of her bankruptcy petition, that the Plaintiff included PR Treasury in the master list and that the Plaintiff listed her pre-petition tax liability with PR Treasury in Schedule E. See ¶¶ 7, 8 and 9 of the *Complaint* (Docket No. 1), ¶¶ 12, 13 and 14 of the *Answer to the Complaint* (Docket No. 16), ¶¶ 1-4 of the *Plaintiff's Statement of Uncontested Facts* (Docket No. 25, p. 2) and ¶¶ 1-4 of the *Reply to Plaintiff's Statement of Material Facts* (Docket No. 33, p. 1). Thus, the Plaintiff met the burden of demonstrating that she provided PR Treasury with actual notice of her bankruptcy petition. Therefore, the burden shifts to the creditor to prevent violations of the automatic stay. Fleet Mortgage Group v. Kaneb, 196 F.3d at 269. To contest that the violation of the stay was willful, PR Treasury only avers that the notices sent to the Plaintiff were only "notices" of an assessment for taxes permitted under Section

15

362(b)(9)(D). As previously discussed, the last notice by PR Treasury dated March 16, 2012 (Docket No. 30, pp. 9-10) does not fall under the exception provided in Section 369(b)(9)(D). Therefore, this court "must presume that the violation was deliberate." Fleet Mortgage Group v. Kaneb, 196 F.3d at 269.

Having been demonstrated that a violation to the automatic stay occurred and that it was willful in regards to the notice dated March 16, 2012, partial summary judgment can be issued as to PR Treasury's liability. As to the actual damages, a separate hearing shall be held at which the parties may present evidence regarding injury and damages. See Laboy v. Doral Mortg. Corp. (In re Laboy), 647 F.3d 367, 376 (1st Cir. 2011).

*(E) Punitive damages*

The Plaintiff seeks punitive damages against PR Treasury under 11 U.S.C. § 362(k). See Docket No. 1, p. 12, and Docket No. 24, p. 17.

Section 362(k) of the Bankruptcy Code provides for the recovery of damages, costs and attorneys' fees by an individual damaged by a willful violation of the automatic stay. In appropriate circumstances, an individual injured by the violation of the automatic stay may also recover punitive damages if the individual establishes the normal elements of a claim for punitive damages, to wit, egregious activity beyond the pale that was not only willful, but also sanctionable as out of the bounds of normal behavior. See Nancy C. Derher & Joan N. Feeney, Bankruptcy Law Manual, Volume 1 § 7:57 (2012-2), p. 1745. The Court has wide discretion to award punitive damages or not. Varela v. Quiñones Ocasio (In re Quiñones Ocasio), 272 B.R. 815, 825-828 (B.A.P. 1st Cir. 2002).

PR Treasury argues that pursuant to 42 U.S.C. § 1981a(b)(1), a party may not recover punitive damages against a government, government agency or political subdivision. The argument is misplaced, as that statute refers to actions brought by citizens against the United States under the Civil Rights Act of 1964, not under the Bankruptcy Code. See 42 U.S.C. § 1981a(a). But the misplacement of the argument does not mean that the Plaintiff is entitled to punitive damages *ipso jure*.

Puerto Rico is a considered a State for bankruptcy purposes pursuant to 11 U.S.C. § 101(52).

16

The PR Treasury Department is a "governmental unit" pursuant to Section 101(27) of the Bankruptcy Code, which provides as follows:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.  11 U.S.C. § 101(27).

Section 106 of the Bankruptcy Code states that:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> > (1) Section[] ... 362 [automatic stay].
>
> > (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
>
> > (3)  The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages.**  Such order or judgment for costs or fees under this title [11 U.S.C. §§ 101 *et seq*.] or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28 [28 U.S.C. § 2412(d)(2)(A)].
>
> > (4)  The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
>
> > (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title [11 U.S.C. §§ 101 *et seq*.], the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.
>
> (b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.  11 U.S.C. § 106 (emphasis added).

"Notwithstanding the bankruptcy court's power to award damages under 11 U.S.C. § 362(k)(1) and its statutory contempt powers under 11 U.S.C. § 105(a), a court may not award damages against [a governmental unit] unless sovereign immunity has been expressly and unequivocally waived" and "punitive damages are expressly excepted from the waiver of sovereign immunity".  Duby v. United States (In re Duby), 451 B.R. 664, 670-671 (B.A.P. 1st Cir. 2011), citing

17

In re Rivera Torres, 423 F. 3d 20, 26 (1st Cir. 2005) (holding that the IRS was immune from award of emotional distress and damages as contempt sanction for violation of the discharge injunction because "Congress has not definitely and unequivocally waived sovereign immunity under [11 U.S.C. § 106]"). Also see In re Schroeder, 2009 Bankr. LEXIS 3498, 2009 WL 3526504, 62 Collier Bankr. Cas. 2d 1279 (Bankr. D. Neb. 2009) (holding that sovereign immunity is not a defense that can be asserted by an agency that has violated the automatic stay, but punitive damages are not available against the State).

Therefore, no punitive damages can be awarded against PR Treasury pursuant to 11 U.S.C. § 106(a)(3). Although PR Treasury waived its sovereign immunity in this case by filing its *Proof of Claim* (Claims Register No. 8-1), this court "may issue against [it] an order, process, or judgment ... including an order or judgment awarding a money recovery, **but not including an award of punitive damages**." 11 U.S.C. § 106(a)(3) (emphasis added). Consequently, this Court lacks jurisdiction under 11 U.S.C. § 106 to impose punitive damages against the Commonwealth of Puerto Rico or its governmental units like PR Treasury.

Conclusion

In view of the foregoing, the Plaintiffs' *Motion for Partial Summary Judgment* (Docket No. 24) is partially granted in regards to PR Treasury's liability for having willfully violated the automatic stay. The Plaintiff's claim for punitive damages is hereby denied and dismissed. An evidentiary hearing on the damages resulting from the violation of the automatic stay is hereby scheduled for July 23, 2013 at 2:00 p.m. The parties shall file proposed findings of fact and conclusions of law 10 days prior to the hearing. Each finding shall refer to a document or a witness indicating the proffered testimony.

Partial judgment shall be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 26th day of April 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

18